MICHAEL G. WHEAT
9/4/15
SEF-6437

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
SEP 0 4 2015
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:_____ |
| Plaintiff, | **COMPLAINT** |
| v. | Title 21, U.S.C.,§§ 846 and 841(a)(1)- Conspiracy To Possess A Controlled Substance With Intent To Distribute (Methamphetamine). |
| JAVIER CARRANZA (1), JOSE ALFREDO CASTILLO (2), | |
| Defendants. | '15MJ2709 |

The undersigned complainant duly sworn states:

Between May 22, 2015 and June 4, 2015, in the Southern District of California, and elsewhere, defendants JAVIER CARRANZA, JOSE ALFREDO CASTILLO, and others, did knowingly and intentionally conspire to possess with intent to distribute 500 grams and more, to wit: approximately 5 kilograms (11 pounds) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21 United States Code, Sections 846 and 841(a)(1).

And the complainant states that this complaint is based on the attached Affidavit, which is incorporated herein by reference.

_____
Steven Epperson, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this 4th day of September 2015.

_____
JAN M. ADLER
United States Magistrate Judge

1

# A F F I D A V I T
# IN SUPPORT OF COMPLAINT

I, Steven Epperson, being duly sworn, declare and state:

### A. TRAINING AND BACKGROUND OF THE AFFIANT

1. I am an investigator and law enforcement officer of the United States within the meaning of Title 21, United States Code, Section 878, who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Titles 18 and 21, United States Code.

2. I have been employed as a peace officer in the State of California since 1990, and have been a federal task force officer with the Drug Enforcement Administration ("DEA") Integrated Narcotic Task Force (NTF) since July 2014. I am currently assigned to the DEA San Diego Field Division NTF Team 2. Prior to my assignment with NTF, I was assigned to the California Department of Corrections and Rehabilitation, Office of Correctional Safety. I have received specialized training in narcotics via the Peace Officer Standards and Training (POST). During my assignment with NTF, I have participated in the surveillance and arrest of numerous drug traffickers. I have debriefed numerous persons arrested for controlled substance trafficking and have debriefed and directed confidential informants in gathering controlled substance intelligence. Also, I have spoken with experienced narcotics investigators concerning the methods and practices of narcotics traffickers. Through my experience and training and my conversations with other investigators, I have also become familiar with the manner in which controlled substances are imported, manufactured, distributed and sold. I have become familiar with the efforts of persons engaged in the importation, smuggling, manufacturing, distribution and sales of controlled substances to avoid detection and apprehension by law enforcement officers. I am also familiar with the manner in which narcotics traffickers use telephone, cellular telephone technology, pagers, coded communications, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

3. The information contained in this affidavit is based on my personal knowledge of this investigation and information provided to me from San Diego Police Department (SDPD), and the National City Police Department (NCPD).

1

4.     This affidavit is made in support of a complaint and arrest warrant against JAVIER CARRANZA and JOSE ALFREDO CASTILLO for violating Title 21, United States Code, Sections 846 and 841 (a)(1) (Conspiracy to Possess with intent to distribute Methamphetamine. This affidavit is intended only to set forth probable cause for the requested complaint. It does not purport to set forth all of my knowledge in this matter.

## B.     PROBABLE CAUSE

1.     Since early 2015, members of the Drug Enforcement Administration (DEA) Integrated Narcotics Task Force (NTF) Team 2 have been investigating the drug trafficking activities of the Old Town National City ("OTNC") criminal street gang.

2.     On May 22, 2015, at approximately 5:15 p.m., NTF Team 2 established surveillance at 884 Woodlawn Avenue, Chula Vista California.

3.     At approximately 5:33 p.m., HSI SA Richards observed a white Chevrolet pick-up truck, bearing California license plate 22301U1, which is registered to JAVIER CARRANZA (CARRANZA) depart the area. CARRANZA was observed by agents as he drove to the area of the Palomar Street Trolley Station and then park in a lot in front of the Food 4 Less grocery store.

4.     As CARRANZA was making the turn into the parking stall, a Hispanic female, subsequently identified as N.R.L., pushed a stroller that carried a male toddler towards CARRANZA. N.R.L. pushed the stroller up to the passenger side of CARRANZA's pick-up truck. CARRANZA opened the right front passenger door from the inside. N.R.L. then quickly remove items from a white bag that was fastened to the rear of the stroller. Officers saw approximately three items being removed from the white bag, and given to CARRANZA. N.R.L. then closed the right passenger door, and pushed the stroller back towards the sidewalk in front of the businesses. CARRANZA depart the area, traveling westbound on Palomar Street.

5.     N.R.L. sat down on a bench, and began to make a call via her cellular telephone. Because of the situation, and that N.R.L. behavior suggested in the agents training and experience , she was trafficking narcotics, the Chula Vista Police Department (CVPD) was summoned to evaluate the situation in regards to the welfare of the child. CVPD officers contacted N.R.L. and positively identified her.

6. Later records check revealed that N.R.L. was arrested in January 2014 at the San Ysidro Port of Entry for trafficking two pounds of marijuana in her child's stroller.

7. On May 31, 2015, N.R.L. was arrested at the San Ysidro Port of Entry for smuggling narcotics into the United States from Mexico. A Customs and Border Protection (CBP) K-9 alerted to N.R.L. near the exit for carrying possible narcotics. CBP K-9 officer contacted N.R.L. she ultimately revealed that she had narcotics concealed on her person, one package within her bra, and two packages in her groin area. All three packages contained a white crystalline substance. That tested positive for methamphetamine. Post *Miranda*, N.R.L. stated that she was crossing two pounds of methamphetamine from Mexico to the United States. N.R.L. admitted that she walked through the San Ysidro Port of Entry, knowing she had two pound of methamphetamine strapped to her person in different locations (breast area, and beneath the stomach/ groin area) and that she was taking the methamphetamine to a person, who she identified as "Javier" (CARRANZA). She described CARRANZA as having a very light complexion for being Hispanic, bald, and having a large physique.

8. N.R.L. stated that on May 22, 2015, she was provided with two pounds of methamphetamine from O.C., in Tijuana, Mexico. She strapped the packages of methamphetamine to her body, and smuggled the methamphetamine successfully from Mexico into the United States via the San Ysidro Port of Entry as a pedestrian. N.R.L. admitted that her young child (a toddler) was in a stroller, and with her when she smuggled the methamphetamine.

9. Once N.R.L. was through the Port of Entry, she said contacted O.C. via her cellular telephone for instructions on how to contact CARRANZA, and they met at the Palomar Trolley Station. [See paragraphs 3-5, above]. N.R.L. gave the methamphetamine to CARRANZA, and CARRANZA then provided her with an unknown amount of money to return to O.C. in Mexico, where she was paid $600.00 [by O.C.] for smuggling the methamphetamine.

10. N.R.L. stated since May 22, 2015, she had successfully smuggled methamphetamine from Mexico into the United States via the San Ysidro Port of Entry, and transported it to CARRANZA on three different occasions. N.R.L. confirmed that she used the same methods as previously mentioned regarding the May 22, 2015 incident.

11. N.R.L. was asked if she would be willing to make a pre-text telephone

3

call to CARRANZA regarding the methamphetamine. N.R.L. consented to the pre-text telephone call.

12. Using N.R.L.'s cellular telephone, CARRANZA was contacted at 619-756-8208. N.R.L. told CARRANZA that she fainted due to medical issues, and went to a hospital for medical assistance. She had since return to Tijuana, Mexico. N.R.L. told CARRANZA that she left the methamphetamine with her cousin. N.R.L. asked CARRANZA if he wanted her cousin to deliver the methamphetamine directly to him. CARRANZA agreed to pick up the methamphetamine from N.R.L.' cousin, and at which time he would give her cousin the money to take back to Tijuana, Mexico.

13. On June 3, 2015, at approximately 7:00 p.m., DEA/NTF Team 2 was conducting a surveillance operation at the Clarion Hotel, 700 National City Boulevard, National City California. At approximately 7:31 p.m., officers observed CARRANZA and JOSE ALFREDO CASTILLO (CASTILLO) arrive at the Clarion Hotel, and park their vehicles in the lower level-parking garage.

14. At approximately 7:55 p.m., officers observed CARRANZA leave the parking lot structure of the Clarion Hotel in the White Chevrolet pick-up truck, while being trailed by CASTILLO, who was driving the green Mazda 6. At approximately 8:00 p.m., National City Police Officers conducted an enforcement stop of CASTILLO for several traffic violations.

15. During the enforcement stop, CASTILLO gave consent to Officer Dougherty to search his vehicle. During the search of the vehicle, Officer Dougherty located a quantity of methamphetamine (99.7 grams) under the cup holder located in the center console that separates the driver and front passenger seats. Based on my training and experience I believe that CASTILLO is a source of supply for CARRANZA and they met at the hotel to do a deal.

16. On June 4, 2015, Police Officer Schmidt with the San Diego Police Department (SDPD) observed CARRANZA driving a 2006 white Chevrolet Silverado pick-up truck, bearing California license plate 22301U1. Officer Schmidt conducted an enforcement stop of CARRANZA for driving a vehicle at night without headlights. During the enforcement stop of CARRANZA, the officer learned that CARRANZA was a fourth waiver as a condition of his bail bond (pending a State narcotics trafficking case).

17. Police officers searched CARRANZA vehicle due to the fourth waiver condition. During the search of the vehicle, Police Officers Short and Barton located 128.78 grams of methamphetamine, and 24.65 grams of heroin under the cup

holder of the center console. In addition, a loaded 9mm semi-automatic firearm was located in CARRANZA's vehicle.

### C. CONCLUSION

18. Based on the foregoing facts, along with my training and experience, I believe that there is probable cause to believe that JAVIER CARRANZA, JOSE ALFREDO CASTILLO and others are violating Title 21 United States Code, Sections 8461 and 841(a)(1)) (conspiracy to possess methamphetamine with intent to distribute.)

_____
STEVEN EPPERSON, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
this 4th day of September, 2015.

_____
JAN M. ADLER
United States Magistrate Judge

5